ROSE MELTZER et al., Plaintiffs, *v.* TEMPLE ESTATES, INC., Defendant and Third-Party Plaintiff. OTIS ELEVATOR COMPANY, Third-Party Defendant.

City Court of the City of New York, Trial Term, New York County, November 6, 1952.

*William Cohen* for plaintiffs.

*John J. Kirwan* and *John O'Grady* for defendant and third-party plaintiff.

*Bernard Gostowski* for third-party defendant.

LUPIANO, J.   This is an action by the plaintiff Rose Meltzer against the defendant Temple Estates, Inc., for personal injuries resulting from an accident which befell her on December 21, 1949, in a self-service automatic elevator in an apartment house owned by the said defendant in which this plaintiff was a tenant. Her husband, Jacob Meltzer, sued for derivative damage.   He died after the commencement of the action and his alleged cause of action has been discontinued without costs.   The case was tried before me without a jury, and requests for findings of fact were duly waived.

The elevator in question had been functioning improperly since December 14, 1949, in that the door would not close completely.   On December 15, 1949, the defendant Temple Estates, Inc. (hereinafter called Temple) called upon the third-party defendant, Otis Elevator Company (hereinafter called Otis), to repair such defective condition. Otis is a third-party defendant here under the provisions of section 193-a of the Civil Practice Act.

Temple and Otis had a written contract for the servicing by Otis of this elevator, which provided: " It is agreed that we (Otis) assume no liability for injuries or damage to persons or property except those directly due to our acts or omissions; and that your (Temple's) responsibility for injuries or damage to persons or property while on or about the elevators referred to is in no way affected by this agreement."

By the repairs which it made, Otis caused the elevator door to close completely, but with such speed that passengers were not afforded a reasonable opportunity to go in and out of the elevator.   It was sufficiently established at the trial that Otis negligently accomplished the repairs in question, so that the elevator door closed with unnecessary and dangerous rapidity.

It was also established that this dangerous condition of the door was known to the superintendent in the employ of the defendant Temple, and who was in charge of the apartment building, and that this individual received such knowledge shortly after the repair job was completed. Nevertheless, the defendant Temple did nothing to bring about a correction of the defective condition nor did it warn users of the elevator of the danger to which they were subjected. The accident to plaintiff occurred on December 21, 1949, six days after the elevator door was improperly repaired by the third-party defendant Otis and a sufficiently long time after the defendant Temple, through its superintendent, acquired actual knowledge of the defective condition resulting from such repairs to have enabled it to make the necessary corrections. The door in question, which was the inner door of the elevator, closing fast, struck plaintiff and injured her. I do not believe that the plaintiff's injuries were as substantial as related by her, and I think that the sum of $400 is adequate compensation. I am satisfied, however, that the accident was caused by the concurring negligence of the defendant Temple and the third-party defendant Otis and without any negligence on the part of the plaintiff.

It remains to determine whether Temple may have judgment against Otis; whether the latter must indemnify the former.

In *McFall* v. *Compagnie Maritime Belge* (304 N. Y. 314, 328) the court said: " Where several tort-feasors are involved an implied contract of indemnity arises in favor of the wrongdoer who has been guilty of passive negligence, if there be such, against the one who has been actively negligent. The actively negligent tort-feasor is considered the primary or principal wrongdoer and is held responsible for his negligent act not only to the person directly injured thereby, but also to any other person indirectly harmed by being cast in damages by operation of law for the wrongful act. Whether negligence is passive or active is, generally speaking a question of fact for the jury.'' In the same case (p. 330) the court said, referring to the fact that one defendant (Belgian Line) was guilty of a " fault of omission '' and other defendants (Transoceanic and Dow) were guilty of " faults of commission ''; " While this is not always determinative, since either a fault of omission or one of commission may constitute active negligence, *it seems to us that the factual disparity between the delinquency of Transoceanic and Dow and that of Belgian Line is so great here that the jury was justified in considering that Belgian Line's fault of omission was only passive negligence.''* (Emphasis supplied.)

According to this recent expression, the relative negligence of such joint tort-feasors will be evaluated in order to determine the question of the " liability over " of the so-called active tort-feasor to the so-called passive tort-feasor. Thus where " faults of omission " are involved nomenclature appraisal retains bearing upon the problem; however, it is the state of delinquencies which finally indicate the category to which such negligence belongs. The common law, in a broad sense clings to this categorical distinction maintaining that " This right to indemnity is subject to the exception that it will not be applied in favor of one contributing to the direct injury by his own active negligence " (*Tipaldi* v. *Riverside Memorial Chapel*, 273 App. Div. 414, 418, affd. 298 N. Y. 686). Basically, the facts are viewed for distinction in light of this language: " mere omission of a legal duty is to be distinguished * * * from that which results from personal participation in an affirmative act of negligence or from a physical connection with an act of omission by knowledge of, or acquiescence " (*Phoenix Bridge Co.* v. *Creem*, 102 App. Div. 354, 356, affd. 185 N. Y. 580). While it may be easy to decide certain cases, some " faults of omission ", in a factual setting, cause such equitable concern as to require application of the *McFall* rule. As a result, he who is substantially less culpable may be indemnified by him whose fault is more gravely viewed. Thus, a moral judgment is passed. Such principle is recognized, though not so explicitly revealed in a realistic appraisal of the decided cases which indicate that moral as well as legal considerations are involved and do determine the issue. Where the case is close the judgment may be one of fact; or if not so close, of law; that is to say, if there is room for a reasonable difference of opinion concerning the comparative culpability of joint tort-feasors, the question of " liability over " will be given to the trier or triers of the facts; otherwise it may be disposed of on a point in law.

I recognize that these general remarks concerning the applicable principles somewhat oversimplify, but I think they serve as a rule of thumb. Illustrative are the following cases: *Schwartz* v. *Merola Bros. Constr. Corp.* (290 N. Y. 145, 155); *Semanchuck* v. *Fifth Ave. & 37th St. Corp.* (290 N. Y. 412); *Walters* v. *Rao Elec. Equipment Co.* (289 N. Y. 57); *McFall* v. *Compagnie Maritime Belge* (*supra*); *Phoenix Bridge Co.* v. *Creem* (*supra*); *Lobello* v. *City of New York* (268 App. Div. 880, affd. 294 N. Y. 816); *Tipaldi* v. *Riverside Memorial Chapel* (*supra*); *Szczepkowicz* v. *Khelshek Realty Corp.* (280 App. Div.

524); *Falk* v. *Crystal Hall* (200 Misc. 979); *Gillette* v. *Luone Co.* (114 N. Y. S. 2d 713).

Among such, I have found that without incident of knowledge potentially translating a '' fault of omission '' into active negligence, the mere breach of a nondelegable statutory duty such as herein involved is unlike the statutory breach (Labor Law, § 241) involved in the cases of *Walters* v. *Rao Elec. Equipment Co.* (*supra*) and *Semanchuck* v. *Fifth Ave. & 37th St. Corp.* (*supra*) which makes the breach, itself, the paramount consideration depriving the statutory obligor of claim over to one also guilty of negligence. This differentiation and its importance is further considered in *Wischnie* v. *Dorsch* (296 N. Y. 257) where at page 261 this language appears: '' we should not extend such rule to other fields not included in its scope (Labor Law, § 241), but leave those situations to be controlled by the rules and standards antedating the statute.'' Holding thusly, they declared that for urgent reasons, the particular statute involving construction and demolition projects perforce dictates a '' positive '' duty whose breach instantly causes primary and active wrongdoing. Thenceforth only unequivocal indemnification for one's own negligence will allow claim over.

Also, in determining the relative culpability *inter se* of joint tort-feasors it may be necessary to consider whether the wrongdoer who seeks to be indemnified has had actual or only constructive notice of the defect which caused the injury. If, knowing of the defect, he failed to repair it, he may be held to have acquiesced in it and thus be barred by '' active '' participation from seeking indemnification. The rule is set forth as follows in Restatement, Restitution (ch. 3, § 95): '' Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition.'' But in *Falk* v. *Crystal Hall* (*supra, p.* 985) it was said that '' where there is adequate opportunity to learn of the situation and to repair the defect, there should arise the resultant duty promptly to remedy — and at that point constructive notice is  *  *  *  on a par with actual knowledge.'' However, for contrary view, insisting upon actual knowledge, see *Gillette* v. *Luone Co.*

(*supra*). In this connection, by way of interpolation, this impasse of views affecting such "faults of omission" offers soluble opportunity to a real application of the *McFall* enunciation which, in full review, compares such fault with the enormity of the other tort-feasor's active delinquency. Any "factual disparity" between both delinquencies becomes the final justification for rejection or acceptance of the "fault of omission" as passive negligence. Thus not by exercise in nomenclature or dialectics but by realistic application of this *McFall* "rule" do we morally and legally determine that something which was not done but which should have been is active or passive negligence.

*Secor* v. *Levin* (273 App. Div. 899) involved the cross complaint of an owner of a multiple dwelling against a contractor who had constructed a roof and gutter over steps in such a way as to cause water to leak and form ice upon the steps. By a divided court, the Appellate Division of the second department dismissed the cross complaint of the owner against the contractor, even though it appeared that there had been little opportunity for the owner to have discovered the defective construction before the accident occurred. The majority of the court concluded that "the defendant owner owed to plaintiff a duty at least as great as defendant contractor, and a cross complaint cannot be sustained in favor of one joint tort-feasor against another *in pari delicto*." The dissenting opinion laid stress upon the fact that the owner was "hardly in a position to inspect the completed work and must rely upon the presumption that the contract was properly performed." It seems to me that the dissenting opinion reflects the rationale of *Tipaldi* v. *Riverside Memorial Chapel* (*supra*) and *Phoenix Bridge Co.* v. *Creem* (*supra*) and recognizes that although the owner of the property could not, insofar as the injured plaintiff was concerned, escape the consequences of the breach of his duty to the latter, nevertheless the "liability over" of the contractor to such owner should properly have depended upon an assessment of the relative delinquencies of these joint tort-feasors. Moreover, the affirmative and negligent act of the contractor (apparently not viewed significantly as active negligence by the majority of the court) could create sufficient "factual disparity" to overshadow the owner's delinquency under the recently enunciated *McFall* "rule".

In the *Tipaldi* and *Phoenix Bridge* cases (*supra*), unlike the *McFall* case, affirmative or active negligence is not present for

use as basic comparison. However, the contractual relations between the joint tort-feasors which existed did influence and did determine the rule to be applied. In these former cases, mere failure to perform a legal duty did not deprive the contractual beneficiary of his claim over notwithstanding both were guilty of passive negligence in the same degree. The courts therein expressed the need, in such circumstances, to inquire into " relative delinquency " evincing the realization that as between each other when one tort-feasor has a contractual and primary obligation which bears upon the happening of the accident, a breach of such obligation makes him the primary or principal wrongdoer, thus saving the other from being cast *in pari delicto*. While these cases are different from the *McFall* case on the facts, both demonstrate a concern to compare the " faults " before determining liability over. Thus do the *McFall* and *Tipaldi* " rules ", by which comparative delinquencies of joint tort-feasors *inter se* are appraised, represent the closest approach to the adoption in our jurisdiction of the theory of comparative negligence.

It would thus seem that it is sometimes misleading, if not futile, to discuss the question of " liability over " in terms of active or passive negligence or in terms of a breach of a statutory or nondelegable duty. Nevertheless, if the authorities be rightly applied, the law will strive to give " indemnity against the principal wrongdoers to one less culpable though both are equally liable to a person injured " (*Schwartz* v. *Merola Bros. Constr. Co., supra*, p. 155).

In the case in hand there was no express agreement by Otis to indemnify Temple, certainly none to indemnify the latter against its own negligence (cf. *Thompson Starrett Co.* v. *Otis Elevator Co.,* 271 N. Y. 36, 41). Hence, the issue is determinable by reference to the hereinabove stated principles of the common law.

The defendant Temple had the duty, imposed upon it by section 78 of the Multiple Dwelling Law, to keep the elevator in good repair. It failed in that duty even though it knew, and had known for about six days, that the door of the elevator was dangerously defective in that it closed with such rapidity that passengers were not afforded a reasonable time for ingress and egress. With full knowledge of this dangerous condition, the defendant Temple took no steps to remedy it and failed to give any warning to persons using the elevator, Such culpability in, as it were, deliberately exposing passengers to this danger, on

the part of the defendant Temple, is equal in degree to the affirmative wrongdoing of Otis in improperly repairing the elevator door. Indeed, the failure to correct a defective condition where one exercises control and has the duty, statutory or otherwise, to repair, and has actual knowledge of the danger or defect, is generally regarded as active negligence. Thus, Temple was actively negligent and, on a comparative basis, if its moral delinquency be weighed with that of Otis, it is as much at fault as Otis.

Judgment may be entered in favor of the plaintiff Rose Meltzer and against the defendant Temple Estates, Inc., in the sum of $400, and there will be judgment in favor of Otis Elevator Company, third-party defendant, dismissing the third-party complaint.

Ten days' stay of execution. Sixty days to make a case.