Steve **KOZMAN**, Plaintiff-Appellant,

v.

**TRANS WORLD AIRLINES**, Inc., Defendant-Appellant,

and

**Allied Maintenance Corporation**, Third-Party Defendant-Appellant,

and

**Allied Cleaning Contractors, Inc.**, Fourth-Party Defendant-Appellant.

No. 330, Docket 23982.

United States Court of Appeals Second Circuit.

Argued May 9, 1956.

Decided Aug. 6, 1956.

Joseph B. Sansone and Max J. Miller, New York City, for Steve Kozman, plaintiff-appellant.

John G. Reilly, New York City (Bigham, Englar, Jones & Houston, Robert F. Ewald, and Harold V. McCoy, New York City, on the brief), for Trans World Airlines, Inc., defendant-appellant.

Keith Brown, New York City (Mendes & Mount and Kenneth R. Thompson, New York City, on the brief), for Allied Maintenance Corporation, third-party defendant-appellant.

Raymond C. Green, New York City (Bernard Katzen, Harry Schechter, and William H. Stieglitz, New York City, on the brief), for Allied Cleaning Contractors, Inc., fourth-party defendant-appellant.

Sidney Goldstein, New York City (Daniel B. Goldberg, Joseph Lesser, and Patrick J. Falvey, New York City, on the brief), for The Port of New York Authority as amicus curiae.

Before CLARK, Chief Judge, and FRANK and HINCKS, Circuit Judges.

CLARK, Chief Judge.

These are appeals by all four parties to an action by plaintiff Kozman for damages for personal injuries resulting from his fall from a ladder while engaged in cleaning the windows of a door of a TWA hangar located at LaGuardia Airport in New York City. Originally Kozman, a window cleaner employed by Allied Cleaning Contractors, Inc., commenced an action in the Supreme Court of New York against TWA, which maintained, managed, operated, and controlled the hangar in question pursuant to a lease, originally from the owner of the airport, the City of New York, later assigned to the Port of New York Authority. Kozman alleged that TWA negligently, suddenly, and without warning revved up all four engines of one of its airplanes with such force as to cause the air current and sound blast engendered by this action "suddenly and violently [to] blow, push and propel the plaintiff and the top of the ladder on which plaintiff was standing to one side and thereafter [to] cause the top of the ladder to slip away from the point at which it rested against the said door and thereafter to dislodge the plaintiff and cause him to be hurled suddenly and violently to the ground below."

After removal of the action to the United States District Court because of the diverse citizenship of the parties, TWA moved to implead Allied Maintenance Corporation, its window cleaning contractor, as a third-party defendant on the basis of the indemnity provisions of the contract between these two parties.[1] TWA alleged that Allied Maintenance

1. "It is understood that we [Allied Maintenance Corp.] will be allowed the use of your telescope scaffold which is located on these premises, which we agree to use at our own risk.

"We will supply all necessary supplies, labor and equipment necessary to perform this service in a thorough and workmanlike manner. * * *

"We agree to indemnify and hold you harmless from and against any and all claims, demands, charges, liabilities or damage by reason of claims for injury to, or death of persons and loss of or damage to property caused by or arising from the negligence of ourselves, our agents, servants or employees during the course of the performance of this agreement."

had violated N. Y. Labor Law, McK. Consol.Laws, c. 31, § 202 by allowing Kozman to use an ordinary window cleaner's ladder to do his work, instead of making him use a telescoping scaffold which TWA had supplied and provided in accordance with the contract.

Thereafter Kozman served an amended complaint in which he repeated the allegations of his original complaint for common law negligence and added a second "cause of action" wherein he repeated his first "cause of action" and further alleged that TWA had violated §§ 28, 29, 30, 202, and 240 of the N. Y. Labor Law, and the Rules of the Board of Standards and Appeals promulgated pursuant to those sections, by failing to provide him with any safety device of any kind or nature within the purview of those sections. TWA denied the material allegations of Kozman's complaint and served an amended third-party complaint which was identical with its original third-party complaint. Allied Maintenance, in addition to denying the material allegations of both Kozman's and TWA's amended complaints, served a fourth-party complaint upon Allied Cleaning seeking indemnity and alleging that Allied Maintenance sublet the window cleaning contract to Allied Cleaning, for which plaintiff was working.

After trial before Judge Noonan and a jury both "causes of action" were submitted for consideration of the jury, which returned a verdict for TWA on the first "cause of action," and for Kozman on the second. In turn the jury granted recovery over by TWA against Allied Maintenance, and by Allied Maintenance against Allied Cleaning—all in the amount of $17,000 and costs. This appeal from the resulting judgment followed.

### The Facts

At 10:30–11:00 a.m. on December 15, 1950, Kozman, an experienced professional window cleaner, was cleaning the lower window panes of TWA's hangar door. He was standing about 10 feet up on an ordinary three-section window cleaner's ladder having an over-all extended length of about 18 feet. The ladder was not equipped with rubber "boots" or "shoes" on its lower extremities. Nor were the windows equipped with anchors to which might be attached safety belts for the cleaners, though the use of such safety devices appears not to have been practicable here.

Adjacent to the hangar doors and running the entire length of the hangar was a strip of level concrete or hard surfacing 4 to 5 feet wide, beyond which the surface began to slant downward to some extent. Prior to mounting the ladder Kozman had placed its feet on the concrete strip about 3 to 3½ feet away from the hangar doors. No one was holding the ladder on the day of the accident, although Kozman testified that it was customary to have a co-worker hold the bottom of the ladder if conditions were such that it might slip. The day before, when he was working on an extension ladder 40 to 44 feet in length, he had had another worker holding the bottom of the ladder.

A Weather Bureau Report introduced into evidence showed that some snow had been falling during the 2½ hours preceding the accident. At 10:40 a.m. occasional snowflakes were falling, possibly accompanied by light rain.

The day before the accident there was testimony that TWA employees had moved aircraft in and out of its hangars by jeep and had warmed up engines near the hangars, but had not created too much "power to the wind." Kozman could observe and feel the extent and strength of the draft thus created by the manner in which it blew against the hangar doors and by the "shaking and rattling" of the doors. There was some evidence that on the preceding day and on other occasions TWA employees warned the window cleaners when aircraft were to be warmed up in the vicinity, but most of this proffered evidence of a prior custom of warning was excluded by the trial judge.

The accident occurred while Kozman was cleaning a window with his right

hand and was holding the side of the ladder with his left. His pail of water was suspended from a rung of the ladder. He testified that suddenly and without warning to him " * * * a big noise came out from the four motors of the TWA airplane, and all of a sudden a great wind like a hurricane hit me, and the doors was shaking and rattling. The top of the ladder blew off on the right side glass and kept on bouncing down. I grabbed my hands around the ladder and down I went." And a TWA maintenance foreman testified that at about the time of the fall all four engines of a TWA aircraft were being warmed up near the hangars prior to its departure for the marine terminal.

The evidence is clear that the top of the ladder slipped. Whether the bottom also slipped is not at all clear, although at one point Kozman testified categorically that the bottom did not slip. Still the sequence of questions and answers in which this denial appears, read as a whole, seems to leave the issue still in doubt; and at any rate Kozman, who was standing well up on the ladder, could hardly have known what happened to its feet.

### The First "Cause of Action"

■ Although a new trial is not necessary in view of the plaintiff's ultimate recovery, we think the trial court erred in two regards with respect to the first "cause of action" against TWA for suddenly and negligently revving up its engines. First it was error to exclude evidence of a custom or habit on the part of TWA's employees to warn the window washers at the hangar of the proposed operation. This evidence was not offered to show a habit or custom of negligence, but to show a custom of care, the breach of which on the day of the accident constituted negligence. See Mahoney v. New York Central R. R., 2 Cir., 234 F.2d 923; Renaldi v. New York, New Haven & Hartford R. Co., 2 Cir., 230 F.2d 841; Cereste v. New York, New Haven & Hartford R. Co., 2 Cir., 231 F.2d 50, certiorari denied New York, New Haven & Hartford R. Co. v. Ce-reste, 351 U.S. 951, 76 S.Ct. 848; Eaton v. Bass, 6 Cir., 214 F.2d 896. Thus it was admissible as relevant to the standard of care which a reasonable and prudent man would exercise under the circumstances. In addition it was clearly relevant to show absence of contributory negligence and probably of assumption of risk, since plaintiff's own standard of care would be affected by reasonable reliance on a customary warning by defendant. See also Davis v. Central Vermont Ry., 2 Cir., 227 F.2d 948.

Further, the charge on assumption of the risk was erroneous and prejudicial. The court charged in part as follows:

"Should you find that the job then being done contained certain hazards of which the plaintiff knew or should have known in the exercise of reasonable care when he undertook to do the job, and that he nevertheless assumed the risk of those hazards and was thereby injured, then you should find for the defendant TWA against the plaintiff on the latter's cause of action.

"If, however, you should find that the plaintiff was not himself negligent and did not assume the risk of what befell him and at the same time you find that the defendant TWA was in fact negligent and that this negligence was the proximate cause of the plaintiff's injuries, then you should return a verdict in favor of the plaintiff and against the defendant TWA."

This general and somewhat sweeping language was not justified by the circumstances of this case. In the leading New York case of Zurich General Accident & Liability Ins. Co. v. Childs Co., 253 N.Y. 324, 327, 328, 171 N.E. 391, 392, where, as here, *plaintiff was not an employee of the alleged tort-feasor*, Chief Judge Cardozo made a comprehensive statement of the law of assumption of risk, during the course of which he said: "The question, therefore, is whether [plaintiff], leaping on the elevator, was so informed of the dangers inhering in the leap as to be placed in

the position of one willing to encounter them."

■ The evidence here (which would have been substantially buttressed by the erroneously-excluded testimony of the custom to warn) was to the effect that Kozman was not informed of the warming up of the TWA plane. If on the basis of past experience he could expect to be warned, he can hardly be held to have assumed the risk of a sudden and unexpected warm-up. Whatever charge on assumption of risk is appropri-ate here must be clearly limited by the principles of the Zurich case, supra, and by reference to the admissible evidence on past custom of warning. See Povanda v. Powers, 152 Misc. 75, 272 N.Y.S. 619. But, as noted below, our affirmance of plaintiff's judgment requires no further or separate action on this issue.

### The Second "Cause of Action"

■ The jury found for Kozman against TWA on the basis of TWA's alleged violation of N. Y. Labor Law § 202 [2] and Industrial Code Rule 21 [3]

2. Sec. 202 of N. Y. Labor Law (30 McKin. Consol.Laws of N. Y., § 202), commonly called the "Window Cleaner's Code," on December 15, 1950, read as follows:

"§ 202. *Protection of persons engaged at window cleaning*

"The owner, lessee, agent and manager of every public building where the windows are cleaned from the outside shall install and maintain anchors on all windows of such building or provide other safe means for the cleaning of the windows of such building as may be required and approved by the board of standards and appeals. The owner, lessee, agent, manager or superintendent of any such public building shall not require, permit, suffer or allow any window in such building to be cleaned unless such anchors or other means are provided to enable such work to be done in a safe manner in conformity with the requirements of this chapter and the rules of the board of standards and appeals. A person engaged at cleaning windows of a public building shall use the safety devices provided for his protection. Every employer or contractor shall require his employee, while engaged in cleaning any window of a public building, to use the equipment and safety devices required by this chapter and rules of the board of standards and appeals.

"The provisions of this section shall not apply to (1) multiple dwellings six stories or less in height located anywhere in this state; nor to (2) any building three stories or less in height in cities, towns or villages having a population of less than forty thousand; nor to (3) the window or windows of any building which may be exempted under any rule adopted by the board of standards and appeals.

"The board of standards and appeals may grant variations pursuant to the provisions of section thirty of this chapter exempting the windows of any building from the provisions of this section where such windows can be and are to be cleaned from the inside.

"The board of standards and appeals may make rules supplemental to this section by designating safety devices of an approved type and strength to be installed on public buildings or to be worn by window cleaners or both, but the absence of any such rule shall not relieve any person from the responsibility placed on him by this section."

3. Industrial Code Rule 21 implements § 202 by designating the types of safety devices approved by it. In defining the scope and application of Code Rule 21, the Board stated in Rule 21–2.2.6: "Every window the lowest part of the frame of which is six feet or more above ground shall be provided with anchors and shall be cleaned by means of such anchors and safety belts except where other safe means are permitted by these rules."

The types of "approved" safety devices (other than anchors) then enumerated in Code Rule 21 were as follows:

I. "21–6. *Ladders.*

"21–6.1. *When to be used.* Ladders shall be used for window cleaning operations only where the windows cannot otherwise be cleaned safely and practicably by means of anchors and safety belts.

"21–6.2. *General use requirements.*

"21–6.2.1. Means of preventing slipping. All ladders used in connection with cleaning operations shall be provided with suitable means to prevent slipping.

"21–6.2.2. Person to hold ladder. Ladders more than 18 feet in length used on a public street, and elsewhere more than 24 feet in length, used in connection with window cleaning operations, shall have a person stationed at all times at the foot of the ladder to hold it in place while the window cleaner is on the ladder. Such person shall face the ladder and hold it with both hands."

promulgated thereunder by the Board of Standards and Appeals, and further found liability over against Allied Maintenance and Allied Cleaning respectively. The two latter defendants argue that, since the accident happened upon premises owned or leased by the Port of New York Authority, the N. Y. Labor Law has no application. But this case does not involve an attempt directly or indirectly to regulate the Port of New York Authority. Cf. Port of New York Authority v. J. E. Linde Paper Co., 205 Misc. 110, 127 N.Y.S.2d 155; Port of New York Authority v. Weehawken Tp., 27 N.J.Super. 328, 99 A.2d 377; Rao v. Port of New York Authority, 2 Cir., 222 F.2d 362, affirming D.C.E.D.N.Y., 122 F.Supp. 595. Rather the question here is whether the states of New York and New Jersey in creating the Port Authority intended that, as between third persons, none of whom can contend it was duly authorized by the Port Authority to employ another standard, a civil remedy otherwise available for violating a statutory standard would be lost solely because the operative facts transpired at a Port Authority airport.[4] In James Stewart & Co. v. Sadrakula, 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596, 127 A.L.R. 821, the Supreme Court, affirming the decision of the New York courts, held that an employee of a building contractor engaged in the construction of a post office building on United States property might recover in tort from the contractor for injuries attributable to the contractor's failure to observe the standards set forth in a provision of the N. Y. Labor Law. Although the legal relationship of the State of New York to the property where the injury occurred in the James Stewart & Co. case differed in some particulars from that existing here, we think the considerations of policy and reasoning there to be closely applicable here and the same result clearly indicated. It may be noted that the Port of New York Authority, in its brief submitted *amicus curiae* in this case, supports this conclusion.

A more difficult problem is the question whether plaintiff adduced sufficient evidence to support his favorable verdict based on the alleged violation of N. Y. Labor Law § 202. TWA's liability under this statute is predicated upon its failure to require that adequate equipment be provided to Kozman to permit him to clean the windows safely under the existing circumstances. The only equipment furnished to Kozman was a ladder without shoes. It is argued that, since under the regulation promulgated pursuant to the statute a ladder was proper equipment, there was no violation of the statute.

Allied Maintenance and Allied Cleaning contend that there was no evidence that the ladder slipped at the bottom, and hence that the absence of shoes was unimportant. We may assume, *arguendo*, that the ladder did not slip at the bottom (thereby making irrelevant the absence of shoes), although, as pointed out above in the statement of the facts, the evidence on this point taken in context was not conclusive. Still, although the ladder may not have been defective, it did fall when exposed to the force of the propeller wash. The jury could have found that the ladder, although in good condition, was inadequate, in the circum-

II. "21–7. *Swinging and built up scaffolds.*

"21–7.1. *When to be used.* Scaffolds shall be used for window cleaning operations only where the windows of a public building cannot otherwise be cleaned safely and practicably by means of anchors and safety belts." (The succeeding provisions of Code Rule 21 [Rule 21–7.2.1 through 21–7.3.2] define the construction and specifications of "swinging scaffolds"; 21–7.4 deals with "Built up light duty scaffolds," their types and specifications.)

III. "21–8. *Boatswains chairs.*"

4. The statutes establishing the Port Authority's control of its air terminals are N. Y. Laws 1947, Ch. 802, § 10, McK.Unconsol.Laws, § 6610; N. J. Laws 1947, Ch. 43, § 10, N.J.S.A. 32:1–35.10. These, however, contain nothing indicating an intent to deprive Kozman of his rights herein asserted under the N. Y. Labor Law.

stances here present, to provide a safe method for the cleaning of the hangar windows.

■ The mere fact that the use of a ladder was approved by the regulations should not be taken to establish that, in peculiar circumstances tending to make the use of a ladder unsafe to clean the windows, the party responsible for the employees' safety will be absolved from all liability simply because it is utilized. In Pollard v. Trivia Building Corp., 291 N.Y. 19, 23–24, 50 N.E.2d 287, 290, the New York Court of Appeals said: " * * nor does the fact that the Industrial Code specifies a particular device exclude other devices that might in a particular case be reasonably deemed better adapted for the protection of the window cleaner." Moreover, § 202 provides: "The board of standards and appeals may make rules supplemental to this section by designating safety devices of an approved type and strength to be installed on public buildings or to be worn by window cleaners or both, but the absence of any such rule shall not relieve any person from the responsibility placed on him by this section." To construe the statute narrowly to allow the use of a ladder in circumstances where its use would be dangerous would be contrary to the New York cases which say that the statute should be liberally construed to protect the workers. See Koenig v. Patrick Const. Corp., 298 N.Y. 313, 319, 83 N.E. 2d 133, 10 A.L.R.2d 848; Red Hook Cold Storage Co. v. Dept. of Labor, 295 N.Y. 1, 64 N.E.2d 265, 163 A.L.R. 439; Osborne v. Salvation Army, 2 Cir., 107 F.2d 929.

Some of the defendants argue that, since there were men on hand whom Kozman could have called to hold the ladder, safe and adequate equipment was provided for the job. But Kozman had no warning of the sudden gust of air, and he presumably believed that he did not need anyone to hold the ladder while there was no wind and he was only 10 feet from the ground. It is true that on the previous day he and others had held the ladders for men who were washing windows.

But the ladders used on that day were "extension" ladders, and the work done was higher up. Also, there had then been warnings before the engines were started, so that there would have been time to call men to hold the ladders and prevent their being blown over.

■ Since, therefore, there was sufficient evidence for the jury to find that TWA had failed in its duty to see that adequate equipment was provided to Kozman to enable him to do his job safely, it would have been error to remove the claim based on TWA's statutory default from the jury's consideration. The jury's determination of this claim must therefore stand. See Swafford v. Atlantic Coast Line R. Co., 350 U.S. 807, 76 S.Ct. 80.

■ The jury further found for TWA against Allied Maintenance and for the latter against Allied Cleaning. TWA can recover over against Allied Maintenance and the latter over against Allied Cleaning only if Kozman succeeds on his second "cause of action" arising from the alleged violation of the N. Y. Labor Law. For his first "cause" based on TWA's negligence in creating a blast of air without warning was certainly "active," thus barring indemnity over under the authorities. See Thompson-Starrett Co. v. Otis Elevator Co., 271 N.Y. 36, 41, 2 N.E.2d 35; McFall v. Compagnie Maritime Belge (Lloyd Royal) S.A., 304 N.Y. 314, 328–329, 107 N.E.2d 463.

Allied Maintenance and Allied Cleaning argue that there can be no recovery over against them even on the claim based on the N. Y. Labor Law. In part they contend that there is no competent evidence establishing that the ladder slipped, and hence the sole cause of the accident was the gust of wind from the plane engines. But whether the ladder slipped at the bottom or was blown over at the top, the jury was justified in finding that inadequate provision was made to prevent the ladder from falling or that a ladder was inadequate to do the job under these circumstances. If TWA was thus guilty of failure to conform to the standards set by the N. Y. Labor Law, the jury might

reasonably find, as it did, that it was entitled to indemnity from Allied Maintenance and Allied Maintenance from Allied Cleaning by an appropriate determination of the seven issues among these three defendants as carefully framed by the trial judge. True, as a question of law the problem presented is whether TWA by its default under the Labor Law was "actively" negligent and, therefore, not entitled to indemnity. But the mere fact that TWA violated the Law is insufficient to render it guilty of "active" negligence. Burris v. American Chicle Co., 2 Cir., 120 F.2d 218, 222.

Allied Maintenance and Allied Cleaning argue that the Burris case, supra, is no longer controlling and that subsequent decisions of the New York Court of Appeals, although not directly in point, show a strong tendency to deny recovery over in cases involving analogous violations of the N. Y. Labor Law. Specifically, our attention is directed to cases arising under § 241 of the N. Y. Labor Law dealing with the safeguarding of persons engaged in building construction and demolition work. See Walters v. Rao Electrical Equipment Co., 289 N.Y. 57, 43 N.E.2d 810, 143 A.L.R. 308; Semanchuck v. Fifth Ave. & 37th St. Corp., 290 N.Y. 412, 49 N.E.2d 507; Duncan v. Twin Leasing Corp., 283 App.Div. 1080, 131 N.Y.S.2d 423, leave to appeal denied 307 N.Y. 940, 122 N.E.2d 336. But the Semanchuck and similar cases involving that statute merely hold that the section imposes a "positive" duty upon the owner and contractor alike and that it is an active, primary duty, the existence of which precluded indemnity in the cases cited. This is not unreasonable, considering the relatively static construction conditions covered by that section, for which an owner or general contractor might be expected to assume active responsibility. But the same considerations do not apply to the respective responsibilities imposed by § 202 on a lessee and his contractor for window cleaning.

The New York courts have clearly and explicitly limited the principle of indemnity thus stated to cases arising under § 241. Wischnie v. Dorsch, 296 N.Y. 257, 72 N.E.2d 700; Schwartz v. Merola Bros. Const. Corp., 290 N.Y. 145, 48 N.E.2d 299; McFall v. Compagnie Maritime Belge (Lloyd Royal) S.A., supra, 304 N.Y. 314, 107 N.E.2d 463; Meltzer v. Temple Estates, 203 Misc. 602, 116 N.Y. S.2d 546; McManus v. Board of Ed. of City of Rochester, Sup., 106 N.Y.S.2d 51; Sid v. Stokes Associates, Inc., Sup., 145 N.Y.S.2d 368; Lobello v. City of New York, 268 App.Div. 880, 51 N.Y.S.2d 7, appeal denied 268 App.Div. 999, 52 N.Y. S.2d 790, affirmed 294 N.Y. 816, 62 N.E. 2d 243; Lundberg v. Prudential S. S. Corp., D.C.S.D.N.Y., 102 F.Supp. 115. Hence we think the authority of Burris v. American Chicle Co., supra, 2 Cir., 120 F.2d 218, is unimpaired and controlling here, and permits recovery over against the window cleaning contractors. See also Banks v. Central Hudson Gas & Elec. Corp., 2 Cir., 224 F.2d 631, certiorari denied Central Hudson Gas & Elec. Corp. v. Banks, 350 U.S. 904, 76 S.Ct. 182.

### Rulings on Evidence

Allied Maintenance and Allied Cleaning object to the admission in evidence of certain notes and reports to the Workmen's Compensation Board of the physicians who treated Kozman. This evidence, which was based on Kozman's statements to the physicians, was to the effect that the ladder slipped; and there was no mention of its being blown over by strong gusts of wind.[5] TWA offered this evidence to rebut Kozman's claim that his fall resulted from a sudden blast of propeller wash. Kozman himself obtained the admission in evidence of a letter dated March 5, 1951, from the Deputy

5. See typically the report of Dr. Wahl: "History: While cleaning windows at LaGuardia Airport, the patient slipped with the ladder, and fell down on both arms. He was unconscious, and was taken to Queens General Hospital by ambulance." And the report of Dr. Benedig: "While cleaning windows, the ladder slipped and I fell with the ladder and broke my both arms, nose, jawbone, and a number of my teeth."

Medical Superintendent of Queens General Hospital to one of the physicians, which states in part: "The above named individual [Kozman] was admitted to this hospital 12/15/50 with history of having fallen from a ladder while at work." Both physicians whose notes and reports were introduced were witnesses at the trial and subject to cross-examination concerning Kozman's account of his version of the accident.

Allied Maintenance and Allied Cleaning concede that, while these notes, reports, and records may be admissible as between Kozman and TWA on the issue as to the existence of a "gust of wind," they were improperly used against the two impleaded defendants on the Labor Law claim to show that the ladder slipped. Specifically they suggest "that the Trial Court's acceptance into evidence of the history in the hospital record and the notes and reports of the physicians were the basis of his subsequently charging the jury that it could find that the ladder slipped without limiting such charge to the main action alone."

■ But as we have pointed out above, neither TWA's nor the impleaded defendant's liability on the Labor Law claim turns exclusively on the question whether the ladder slipped at the bottom. Further, the issues between TWA and the impleaded defendants as formulated by the judge in his charge make no mention of the slipping of the ladder. In any event, it is clear that the medical reports and records, in so far as they bear upon the account of the happening of the accident, were of importance only upon the issue of TWA's negligence in warming up the engines. Whatever implication they may have for the question whether the ladder in fact slipped at the bottom is obscure and too trivial to be prejudicial to the impleaded defendants. Hence we need not consider the applicability of the Federal Business Records Act, 28 U.S.C. § 1732, and the distinction as drawn in, e. g., McCormick on Evidence 611 (1954) between use of the doctors' records as case history relevant to diagnosis and treatment and their use—against some-

one other than the patient—as evidence of the truth of the facts stated. Compare Terrasi v. South Atlantic Lines, 2 Cir., 226 F.2d 823, certiorari denied 350 U.S. 988, 76 S.Ct. 475, and cases cited.

## Conclusion

■ Since we affirm Kozman's recovery and TWA's and Allied Maintenance's recovery over of indemnity on the claim of violation of the Labor Law, plaintiff is not entitled to a new trial on his additional theory of common law negligence. Though attempts to recover on the two theories be denominated two different "causes of action," they each involve the same accident, the same injuries, and the same damages, and are in effect merely two bases for the same claim. Since he is actually recovering his damages on this claim, he is not injured by any failure to adopt his legal views in full detail. Nor in fact does he ask for a new trial in the event of our affirmance of the verdict and judgment awarded him.

Affirmed.

HINCKS, Circuit Judge (dissenting in part).

I agree with the holdings of the majority of the court as to error inherent in the verdict for the defendant TWA on the First Cause of Action. I think, however, that there was no evidence to support the plaintiff's verdict on the Second Cause of Action.

This second count was based solely on an alleged breach of statutory duty imposed by N. Y. Labor Law, § 202 which is implemented by Industrial Code Rule 21. Since concededly it was not feasible to install anchors on the hangar doors, under § 202 it was TWA's duty to "provide other safe means for the cleaning of the windows * * * as may be required and approved by the board of standards and appeals."

In addition to anchors and safety-belts, the "other safe means * * * required and approved" were (1) Ladders equipped with "suitable means to prevent slipping," with a helper to hold in place "ladders more than 18 feet in length on

a public street, and elsewhere more than 24 feet in length" (Rule 21–6.1 and 6.2); (2) Scaffolds (Rule 21–7); and (3) Boatswains chairs (Rule 21–8). Plainly the statute, § 202, does not require that where, as here, anchors are concededly impracticable, the owner must for each window provide all three "safe means": the provision of one of the three approved means complies with the statute. Teller v. Prospect Heights Hospital, 280 N.Y. 456, 21 N.E.2d 504.

The ladder involved in this case was not over 18 feet and was not being used on a public street. Thus no helper to hold it in place was required by Rule 21–6.2. Even if—as there was some evidence to show—the ladder was not equipped with rubber "boots" to prevent slipping, that fact could not possibly have been the proximate cause of the accident. The plaintiff's own testimony required a finding to the contrary. On the trial he testified as follows: Q. "Did the ladder slip from the bottom? Did the feet slip?" A. "It slipped to the right side. I was blown off." Q. "My question was, sir, did the feet of the ladder slip?" A. "No." It follows that there was no basis for a plaintiff's verdict on the second count.

My brothers quote Pollard v. Trivia Building Corp., 219 N.Y. 19, 50 N.E.2d 287, 290, for its statement that "the fact that the Industrial Code specifies a particular device [does not] exclude other devices that might in a particular case be reasonably deemed better adapted for the protection of the window cleaner." I confess that I do not understand just what was meant by the statement or why it was included in an opinion in a case in which concededly no safety device whatever had been provided. But it is abundantly clear, especially in the light of Teller v. Prospect Hospital, supra, cited thereto, that the passage does *not* mean that an owner who provides a safe means approved by the Code may nonetheless be held to have violated the Statute.

Nor can I understand the relevance of the final paragraph of § 202 of the Labor Law which my brothers say "should be liberally construed to protect the workers." To me it seems wholly obvious that by that paragraph it was meant only that an owner should not be absolved from providing a safe means sanctioned by the Code merely because another means, which he may have provided and which may have been adequate to satisfy the objective of the Statute, was not included as an approved means in the Code. My brothers seem to think their holding permissible under a *liberal construction* of the statute. I think they can reach their result only by arrogating to themselves, or according to the jury, power to add some Rule to the Code. And even so, they give no definition whatever to the synthetic Rule which they seem to envisage. Certainly the cases which they cite do not justify statutory construction of such vague and sweeping amplitude.

I would reverse the judgment for the plaintiff on the second count and the judgments on the third- and fourth-party complaints (which are dependent on the plaintiff's second count) and remand with a direction to dismiss. On the first count, I would reverse for the errors noted in the majority opinion and remand for new trial.