STEVE POVANDA, an Infant over the Age of Fourteen Years, by JOSEPH BERNFELD, His Guardian ad Litem, Plaintiff, *v.* MARION T. POWERS, Defendant.

Supreme Court, New York County, June 26, 1934.

*Oppenheimer, Haiblum & Kupfer* [*Milton P. Kupfer* of counsel], for the plaintiff.

*Joseph G. Myerson*, for the defendant.

LAUER, J. This action was instituted by the plaintiff to recover damages for personal injuries alleged to have been caused by the negligence of the defendant. The trial was had without a jury.

The plaintiff, Steve Povanda, an infant over the age of fourteen, on July 27, 1932, was employed as a caddy by the Churchill Valley Golf Club, in the county of Allegheny, Penn. At the time of the accident the plaintiff was caddying for a player other than the defendant. It is plaintiff's contention that while playing the fourteenth hole of the Churchill Valley Club course on that day, the defendant struck his golf ball and conducted himself in such a negligent manner that the plaintiff was hit by the defendant's golf ball, and thereby suffered the injuries for which he seeks damages.

The plaintiff has assigned to the defendant the following acts which he claims to have been negligent:

(1) That the defendant used a " driver " in the " rough; "

(2) That the defendant was playing in a " seven-some " and was negligent in so playing;

(3) That the defendant failed to give audible warning to the plaintiff prior to addressing and striking his golf ball, although the plaintiff was but a short distance away and within the range of danger.

In my mind there is no question as to the serious character of the plaintiff's injuries. Testimony was educed on the trial which proved that the plaintiff was in a hospital continuously for a period of three weeks, has since been compelled to undergo medical treatment and to return to the hospital for observation and treatment on several occasions.

The plaintiff at the present time suffers from loss of memory, headaches, dizziness and other ailments which probative evidence substantiated as having been caused by the blow on the head from the defendant's golf ball.

The first question involved here is whether or not the defendant was negligent in his conduct on the golf course at the time of the

accident, and if so whether this negligence was the proximate cause of the plaintiff's injuries.

An analysis of the testimony elicits the following facts: The defendant on the day in question with six other players was playing the fourteenth hole of the Churchill Valley Golf Club course. The defendant was the last player to take his " drive " and " dubbed " it approximately five or six feet to the left of the tee into the " rough." The plaintiff had taken a position approximately thirty-five yards ahead of and about ten feet to the left of the tee when the defendant without calling the admonitory cry of " Fore " or any other cry, took his " second shot," the ball striking the plaintiff on the head. Testimony was offered by Russell Schaffer, the defendant's caddy, that at the time the ball was struck he " hollered ' Fore.' " There is no question but that the plaintiff knew seven players were playing. At the time of the accident the plaintiff was seventeen years of age.

Golf frequently has been designated a royal and ancient game. It was at one time " indulged in only by kings and nobility." (*Gleason* v. *Hillcrest Golf Course, Inc.*, 148 Misc. 246, at p. 248.) Accidents on the golf course in those days were, of necessity, few in number. With its increasing popularity in the last score of years golf has now become the game not only of the elect and expert, but of " dubs " and duffers as well. In this evolution the source of danger from flying golf balls on a golf course has increased in proportion to the number of players. There now appears a necessity for sending the much legally-used ordinary, reasonable, careful and prudent man upon the golf course to determine the mode of conduct for players. The precedents are few. This fact was pointed out in *Simpson* v. *Fiero* (237 App. Div. 62, at p. 65), where it was stated: " Notwithstanding the fact that golf is played by many thousands of people, there are few reported golf cases. In fact, no case decided by the courts of this State has been called to our attention, nor has independent research disclosed any. This is indicative of almost universal compliance with the rules of the game, and evidences the care, courtesy and sportsmanship on the part of those who play the game, all of which have contributed so largely to its popularity."

I believe the use of a " driver " in the " rough " by the defendant was not negligence in itself. It at least was not the proximate cause of the injuries to the plaintiff. It is not unusual in golf to see a player with an exaggerated opinion of his ability to use certain clubs. On this score certain golfers are eccentrics. While it is true that a " driver " is seldom used in the " rough," the defendant might have felt that the " driver " was the proper club for him to

use at the time. It often happens that one player might consider a " mid-iron " a necessity for his particular shot, while another player might use a " mashie " for the identical stroke, or one player might be prone to use a " brassie " and another a " spoon " for an identical shot. I do not feel that the defendant was negligent, therefore, in the choice of his club.

Neither do I feel that the playing of a " seven-some " is of itself an act of negligence. Testimony was produced at the trial to prove that on this particular course a type of match known as a " swat " was often played, and included more than seven players. It is true that the recognized standard of match playing is a " foursome " and it is customary to play in " foursomes " or less. I believe that as the number of players increases, the ordinary, reasonable and prudent man playing in such increased numbers would take extra precautions and care in discerning the whereabouts of his fellow players and their respective caddies. The greater the number of players, the greater the risk to his fellow players and their caddies. Consequently, a greater degree of care is necessary inasmuch as the likelihood of hitting someone has been increased. The players and their caddies are entitled to that degree of care which has been thoroughly established and settled by legal authority and which requires a person about to play his golf ball to give a timely and adequate warning to any persons in the general direction of his drive. (*Simpson* v. *Fiero, supra; Toohey* v. *Webster*, 97 N. J. Law, 545; 117 Atl. 838; *Biskup* v. *Hoffman*, 220 Mo. App. 542; 287 S. W. 865; *Everett* v. *Goodwin, etc., Club*, 201 N. C. 734; *Stober* v. *Embry*, 243 Ky. 117.) I believe the defendant in this case was negligent. This negligence consisted in his failure to give a timely and adequate warning to the plaintiff who was in the general direction of the defendant's drive. The defendant before he took his second shot should have called " Fore," or given some other audible admonition before hitting the ball. A golf ball is ordinarily a harmless thing. When it is struck a hard blow by a golf club it assumes the nature of a dangerous missile. There are few players capable of accurately and invariably controlling the flight of a golf ball. " Hooks " and " slices " are common occurrences. It is this very uncertainty of the game which makes golf intriguing. Defendant testified that he was not an expert golfer, and played " at " the game. He " dubbed " his first shot. He was playing in a seven-some and knew, or should have known, that there were other players and caddies about him. He should have looked about before addressing the ball and should have given warning to any person reasonably within range of danger. The fact that his caddy " hollered ' Fore ' "

at the time the ball was struck does not condone the defendant's negligence.

The questions which now become pertinent are whether the plaintiff assumed the risk of being hit by a golf ball by acting as a caddy, and whether or not the plaintiff was contributorily negligent. I feel that having already decided that it was the duty of the defendant to give audible and timely warning of his intended play it naturally follows that, if the defendant failed to give this warning in a proper manner before making his shot, he was guilty of a breach of duty and it cannot be seriously contended that, under such circumstances, the plaintiff assumed as a matter of law, the risk of injury resulting from the defendant's failure to perform a duty upon which the plaintiff had the right to rely. (*Toohey* v. *Webster*, *supra*.) Furthermore in this case the plaintiff was not in the employ of the defendant, but was acting as caddy for a Mr. Pierpont, so that it cannot be said that the plaintiff assumed the risk of his employment.

I do not believe that it can be said that the plaintiff was contributorily negligent. All the players had taken their respective shots from the tee. It is customary for caddies to go to the place they have "marked" and search out their employers' ball as speedily as possible after all the players have taken their drives. The plaintiff could have assumed that any player behind him taking his second shot would give warning before his next play. I believe the accident could have been avoided had the defendant given the plaintiff an admonitory warning before taking his second shot, and it was because of his failure to do this that the accident occurred.

The plaintiff will undoubtedly be handicapped and suffer for the rest of his life. I feel under such circumstances the plaintiff should have judgment in the sum of $10,000.

Judgment should be so entered.