**Kevin Conway, a Minor, by his Father and Next Friend, Edward Conway, Plaintiff-Appellee, v. Lorraine Tamborini, Defendant-Appellant.**

Gen. No. 65–52.

Third District.

March 24, 1966.

Herbolsheimer & Lannon, of LaSalle, for appellant.

Kevin D. Kelly, of LaSalle, and William H. Herring, of Peoria, for appellee.

CORYN, P. J.

In June of 1962 the plaintiff, Kevin Conway, then fourteen years of age, was injured when the bicycle he was riding was struck by an automobile driven by Lor-

raine Tamborini, defendant. The accident occurred on a gravel road west of Oglesby near the farm where Kevin Conway resided with his parents, Ed and Eloise Conway. Plaintiff was returning home for lunch from a tennis match in Oglesby. The gravel road was approximately thirty feet in width, level and straight. It was a clear day and visibility was good. Both the bicycle and automobile were traveling in a westerly direction, and there was no other traffic on this road at that time.

Kevin Conway testified that he was riding on the right side of the road, about four feet from its north edge, and two hundred feet from his home, when he heard a horn behind him. He looked around and saw the Tamborini car about three hundred feet away, and then moved his bicycle to the extreme right side of the road. He estimated defendant's speed then to be about fifty miles per hour, and his own about five miles per hour. The next thing he knew he was struck from the rear by defendant's car. The impact threw him off the bike and forward about twenty feet. He landed in a grassy ditch two feet north of the graveled portion of the road. He was lying on his stomach in the ditch, and felt pain in his hip and back. Mrs. Tamborini helped him to the front seat of her car. Plaintiff stated that he observed skid marks approximately sixty feet in length running from the defendant's car at an angle to the northeast. The skid marks, where they started, were about nine feet from the right edge of the road. The right front wheel of defendant's car, when it came to rest, was one foot into the grassy area of the ditch, and the right rear wheel about one foot on the gravel road.

Lorraine Tamborini testified that she was about a block from the boy when she first noticed him, and that at that time he was traveling on the left hand or south side of the road. She took her eyes off the road for a

second to check the speedometer. The boy did not turn his bike the first time she honked, but when she honked again, he turned the bicycle toward the right or north side of the road. She stated that this turn was made by him when her automobile was only a few feet away, and that the bicycle was going north, and her car west, when the collision occurred. The left front of the automobile struck the bicycle, breaking the left headlight on the car. Defendant had applied her brakes, and the car had skidded thirty to forty feet prior to the impact, and came to rest in a diagonal position with the right front wheel a few feet in the grassy ditch on the north side of the road.

The jury returned a verdict for the plaintiff in the amount of $10,000, and it is from the judgment on this verdict that defendant appeals.

■■■■ Defendant argues that it was error to allow Kevin Conway to testify as to the speed of the Tamborini car because of a lack of opportunity to observe this car. The record clearly indicates that the plaintiff had a momentary glance over his shoulder at this automobile when it was three hundred feet to his rear. On cross-examination the boy reiterated his estimate of speed of fifty miles per hour, and freely admitted that it was based on brief look over his shoulder and therefore could be mistaken. Estimates of speed of an automobile at a given time are considered a matter of common observation rather than expert opinion, and therefore persons of ordinary intelligence and means of observation are competent to testify as to the rate of speed of a moving object. The fact that Kevin Conway's opportunity to observe the Tamborini car was momentary affects the weight, and not the admissibility, of his testimony. Birnbaum v. Kirchner, 337 Ill App 25, 85 NE2d 191.

■■■ Policeman Walter White, who arrived at the scene of the accident before the automobile was moved, testified that he measured the automobile skid marks

to be thirty feet long. Eloise Conway, plaintiff's mother, who was at the scene immediately after the accident, estimated these skid marks to be forty to fifty feet long; Mrs. Tamborini estimated them to be thirty to forty feet; and Kevin Conway estimated them to be sixty feet. Ed Conway, plaintiff's father, testified that he arrived home at 5:00 p. m. on the date of the accident and went to the scene of the accident where he took photographs, and where he measured the skid marks as being sixty feet long. The vehicles had been removed from the scene by this time. Defendant objected to this testimony as being incompetent because these measurements were taken five hours after the accident and by a person who did not view the scene of the accident before the vehicles were removed. There is no indication in the record as to whether any of these measurements or estimates of the length of these skid marks was from the beginning of the marks to the rear wheels of the automobile, or from the beginning of these marks to their end in the grassy ditch. We are of the opinion that the admission of Mr. Conway's measurements of these skid marks did not constitute reversible error, as this evidence was cumulative in nature.

 Dr. John Hackett examined the plaintiff shortly after the accident at his office in Oglesby, and later had him x-rayed at St. Mary's Hospital. He stated that Kevin complained of soreness in the right thigh and buttocks area, and later complained of pain in his back. These x-rays, according to Dr. Hackett, showed no "fracture or bony pathology." He reached no conclusions, nor made any final diagnosis, and last saw plaintiff in August of 1962. Defendant had Kevin Conway examined by Dr. Bernard J. Doyle on November 18, 1964. Dr. Doyle found no objective symptoms, and diagnosed plaintiff's subjective complaints as a strained back, with a resulting loss of strength in the back. He stated he could not determine at that time whether this condition was

195

permanent. The plaintiff's attorney referred him to Dr. Fred L. Stuttle, who first examined the plaintiff on February 9, 1963. Dr. Stuttle was permitted to testify, over defendant's objection, about the subjective complaints related to him by plaintiff. He had x-rays taken at this time, and again on the day before he was called to testify herein. Dr. Stuttle, from these x-rays, diagnosed the boy's injuries as a posterior displacement of the fifth lumbar vertebra with evidence of narrowing of the intervertebral space between the fifth lumbar and first sacral vertebra. He stated that these injuries could have been caused by the collision in question, and that these injuries to the back were permanent. Dr. Stuttle saw the plaintiff on five occasions and prescribed for him a series of strengthening exercises, which the plaintiff testified he regularly performed. Dr. Stuttle also recommended a back brace, diathermy, massage, and injections, but the plaintiff never undertook these treatments. Defendant argues that Dr. Stuttle was an examining physician, and not a treating physician, and therefore he should not have been permitted to testify regarding the plaintiff's subjective complaints or history of claimed injuries. Both parties agree that a treating physician, as an exception to the hearsay rule, can relate the medical history and subjective symptoms of his patient on the theory that a person will not give false statements to a physician from whom he expects to receive medical aid. An examining physician, that is, a physician to whom a litigant submits himself for physical examination for the purpose of testifying, can testify only to objective symptoms. Jensen v. Elgin, J. & E. Ry. Co., 24 Ill2d 383, 182 NE2d 211; Shell Oil Co. v. Industrial Commission, 2 Ill2d 590, 119 NE2d 224. In the instant case the record establishes that Kevin Conway saw Dr. Stuttle several times over a period of months, and that he daily performed those strengthening exercises prescribed for him by Dr. Stuttle. We

are satisfied that there is sufficient evidence to sustain the trial court's conclusion that plaintiff sought the services of Dr. Stuttle for the purpose of obtaining medical relief, and not solely for the purpose of obtaining Dr. Stuttle's testimony in this cause.

■ Defendant argues that the court erred in giving plaintiff's instructions 15, 16, 11 and 14. Instruction 15 (IPI 10.05) informed the jury that a minor is not to be "held to the same standard of conduct as an adult." Defendant contends that because a minor, when operating a bicycle upon a public highway in Illinois, is subject to the provisions of the Uniform Act Regulating Traffic on Highways, ch 95½, §§ 48 through 239, Ill Rev Stats, that said minor is held to the same standard of care as an adult. Defendant cites Betzold v. Erickson, 35 Ill App2d 203, 182 NE2d 342, where a thirteen-year-old boy was operating a pick-up truck; Ryan v. C & D Motor Delivery Co., 38 Ill App2d 18, 186 NE2d 156, where a nineteen year old boy was operating an automobile; and Dawson v. Hoffmann, 43 Ill App2d 17, 192 NE2d 695, where a seventeen year old boy was operating an automobile. In all of these cases the court determined that a minor, when operating a motor vehicle on a public highway, shall be held to the same standard of care as an adult. The rationale of these decisions is that other motorists cannot determine that the operator of an oncoming automobile or truck is a minor, and therefore guard against youthful imprudence, as a motorist could do if the minor was engaged in the usual childhood activities, and that therefore it would be unfair if a minor were not held to the same standard of care as an adult. We do not think that this rule applies here as it is uncontradicted that the plaintiff, a fourteen-year-old boy, was riding his bicycle down a graveled country road about noon on a clear day. The appearance of this boy, with his tennis racket, and riding his bicycle, was notice to the defendant that the person some three

197

hundred feet ahead was a minor, and that defendant should act accordingly.

■ Instruction 16, paraphrases § 56(a) of the Uniform Act Regulating Traffic on Highways (Ill Rev Stats c 95½, § 153(a)), and instructs the jury to take into consideration a violation of the statute requiring a vehicle when overtaking another in the same direction to pass on the left. We find illogical defendant's argument that this section of the Uniform Act Regulating Traffic on Highways does not apply when an automobile is passing a bicycle, especially in view of the fact that the defendant submitted his Instruction 3, which was given, and which informed the jury that bicycles were subject to the provisions of said Uniform Act Regulating Traffic on Highways.

■ Instruction 11 was an issue instruction (IPI 20.01), and defendant contends that those portions of this instruction referring to failure to yield right of way, operating an automobile at a high rate of speed considering the circumstances, and failure to keep a proper lookout were improper, there being no foundation in the evidence for so instructing the jury. The same objection was made to that portion of Instruction 14 (IPI 30.01 and 30.04) referring to possible disability resulting from the injury. We reject this argument as Dr. Stuttle clearly testified that the plaintiff had incurred permanent disability. Also, without a further recitation of the evidence, we are satisfied that the evidence, and inferences therefrom, support the giving of Instruction 11.

■ ■ The evidence regarding both the liability and damages aspects of this case was conflicting. It is the jury's function, in such cases, to weigh the evidence, and draw the conclusions as to liability and amount of damages. The jury's verdict should not be set aside merely because different conclusions could be drawn, or because we might feel other results are more reasonable.

Dowler v. New York, C. & St. L. R. Co., 5 Ill2d 125, 125 NE2d 41.

Accordingly, the judgment of the Circuit Court of La Salle County is affirmed.

Affirmed.

ALLOY and STOUDER, JJ., concur.