John O. Marbach, J.
Defendant moves to set aside the verdict and for a new trial on the ground that the verdict was contrary to the law of the case since the charge given by me, as Trial Judge, was erroneous as a matter of law.
The question presented here is, as far as can be determined, a case of first impression not only in this State but also in the Nation. The issue is the standard of care which must be exercised by an 11-year-old infant defendant when he is playing golf.
The facts are relatively simple and may be summarized as follows: Defendant, an 11-year-old boy was playing in a foursome at the Harrison Country Club with his mother and two other adults. The infant defendant was on the tee of a par-three hole of about 170 yards. Plaintiff had just left the green on the par-three hole and was crossing a foot bridge, which his caddy was about to cross, about 150 to 160 yards from the tee, in plain view of the tee, when he was hit in the knee by the ball driven from the tee by the infant defendant. The infant testified that he saw the plaintiff before he hit; There was testimony that indicated that infant had yelled ‘ ‘ fore ’ ’, the traditional warning given on the golf course when a golfer sees that someone may be hit by a golf ball. Plaintiff testified he did not hear the warning. There was further testimony *129 which indicated that the infant was a boy who had been playing golf two to three times a week during the season for the past two years. It was apparent on the trial, from the shot hit by the infant, that he had at least some proficiency in hitting the golf ball.
The court charged the jury that the infant in this case was to be held to the standard of care of an adult and not to the usual standard of care of a child. The jury returned with a verdict for the plaintiff.
At the outset it should be established that a golfer owes a duty to use reasonable care to avoid injuring other players on the golf course. (Trauman v. City of New York, 208 Misc. 252; Johnston v. Blanchard,, 276 App. Div. 839 [1st Dept., 1949]; Toohey v. Webster, 97 N. J. L. 545; Walsh v. Machlin, 128 Conn. 412.) Furthermore, a golf ball is a dangerous missile which can cause serious injury if it hits someone while in flight. (Povanda v. Powers, 152 Misc. 75 [Sup. Ct., N. Y. County, 1934].) See, also, Ratcliffe v. Whitehead (3 West. Week. Rep. 447 [Manitoba, 1933]) where the court stated that, in some ways, hitting a golf ball can be more dangerous than firing a gun or throwing a stone since one is likely to have more control over the direction of a gunshot or a thrown stone than a golf ball. The ordinary rules of negligence apply to games and in the playing of games as in other transactions in life a person must exercise reasonable care. (Cleghorn v. Oldham, 43 Times L.R. 465 [Eng. 1927].) It is for this court to determine based upon all the factors involved whether this infant defendant while he was on the golf course is to be held to the standard of care of the reasonably prudent infant or the reasonably prudent man.
This court holds that this infant should be held to the standard of care of the reasonable man. This raises several questions and the court will proceed to discuss the relevant considerations.
I.
The mere fact that there is lack of precedent on this question is not controlling since the real issue is not whether there is precedent for this type of a situation but whether the defendant should be held liable for the wrong inflicted on the plaintiff. Courts sometimes are called upon to sustain a recovery upon legal principles clearly applicable to a new set of facts although there is no direct precedent for it. The law is not static. It must adapt and change as new situations dictate. If a court were to refuse to consider novel questions it would be shirking its responsibilities to itself, to the Bar and *130 above all to the administration of justice. (See, e.g., Rozell v. Rozell, 281 N. Y. 106.)
II.
The ancient and honorable game of golf has been with us since around 1100. It is only within the last few decades that it has evolved into a game which is either played or played at by some eight million people throughout the world. The pastime that was at one time “ indulged in by only kings and the nobility ” (Gleason v. Hillcrest Golf Course, 148 Misc. 246, 248) and was described by Andrew Carnegie as an “ indispensable adjunct of high civilization” (“The Complete Golfer ”, edited by Herbert Warren Wind, Simon and Schuster, New York, 1954, at xvi of preface), has now become a game which is played by people of all classes from all walks of life. Hand in hand with the increasing popularity of the sport has been a rise in the number and type of accidents occurring on the golf course. One of the most common accidents results when one of the participants, or a person in the gallery, is struck by an err apt golf ball projected from the club of a competitor who never dreamed he or she would ever hit anyone with that shot.
All golfers assume the ordinary risks incident to the game when they venture onto the course. (Johnston v. Blanchard, 276 App. Div. 839 [1st Dept., 1949], affd. 301 N. Y. 599; Rocchio v. Frers, 248 App. Div. 786; Benjamin v. Nernberg, 102 Pa. Super. Ct. 471; Stober v. Embry, 243 Ky. 117.) This is inherent in a game which has few players able to accurately and consistently control the flight of a golf ball. Indeed, as Judge Lauer indicates in Povanda v. Powers {supra, p. 78), it is this very uncertainty which makes golf intriguing and which undoubtedly has contributed greatly to its phenomenal growth. A competitor or for that matter a member of the gallery does not, however, assume the risk of someone’s negligent conduct while on the golf course. While the rule is sometimes loosely stated that a person who hits a golf ball must give timely and adequate warning to any persons in the general direction of his drive (Povanda v. Powers, supra; Toohey v. Webster,. 97 N. J. L. 545, supra), th'at rule applies only to shots initially played under nonnegligent circumstances. The shouting of “ fore ” does not exculpate careless or reckless conduct. (Page v. Unterreiner, 130 S. W. 2d 970 [Mo. App.].) All persons on the golf course have a right to rely on the players’ adherence to a standard of care, based upon the avoidance of reasonably foreseeable risks. All courts would *131 hold every adult to the standard of the reasonably prudent man under all the circumstances. Our inquiry here is directed solely to the question of whether it is reasonable to hold this defendant infant to the same standard of care.
III.
An infant may be held civilly liable for damages occasioned by his tortious acts. (See, e.g., Taksen v. Kramer, 239 App. Div. 756; Rozell v. Rozell, 281 N. Y. 106.) The general rule is that, if the actor is a child, the standard of conduct to which he must conform to avoid being negligent is that of a reasonable person of like age, intelligence and experience under the like circumstances. (Restatement, Torts 2d, § 283 A.) The theory behind the general rule is that there is a general interest in the welfare and protection of infants and if a question of the infant’s liability arises the courts can draw upon a wealth of community experience from which it is possible to determine what standard the infant should be held to in a particular situation. It has been recognized that the standards of conduct which apply to infants when his own liability is in question may be different from that to which he is to be held when he seeks to recover from an admittedly negligent defendant. Stated another way he may be held to a higher standard when he actively exposes others to hazards than when he is protecting himself against hazards. (Dellwo v. Pearson, 259 Minn. 452; see, also, Shulman, The Standard of Care Required of Children, 37 Yale L. J. 618 [1927].) While most of the cases, such as all those cited by the defendant, referring to infant’s standard of care are questions of the infant’s contributory negligence, in the case at bar the infant is a party defendant, along with his father who was not present on the links at the time of the occurrence.
W
There is an exception to the general rules for infants who engage in adult activities. Restatement, Torts 2d (§ 283 A, comment C) provides: “ Child engaging in adult activity. An exception to the rule * * * may arise where the child engages in an activity which is normally undertaken only by adults, and for which adult qualifications are required. As in the case of one entering upon a professional activity which requires special skill * * * , he may be held to the standard of adult skill, knowledge and competence, and no allowance may be made for his immaturity. ” It has been held that an *132 infant must exercise the same standard of care as an adult when he is driving a motorboat or airplane (Dellwo v. Pearson, 259 Minn. 452, supra); a go-cart (Ewing v. Biddle, 216 N. E. 2d 863 [Ind.]); a motor vehicle or motorcycle (Daniels v. Evans, 107 N. H. 407). There are several other cases in various jurisdictions concerning infants driving power-operated machines such as the above. The rationale for these decisions is that when a minor engages in such activities as the operation of an automobile or similar power-driven device, he forfeits his rights to have the reasonableness of his conduct measured by a standard commensurate with his age and is thenceforth held to the same standard as all other persons. (Ann. 97 ALR 2d 872, 875.) The underlying theory for this view would seem to be that the very nature of a power-driven vehicle makes it a dangerous instrument whether driven by an adult or a child since it obviously makes little difference to the maimed pedestrian or occupant of a vehicle that his mechanized nemesis was a minor.
This court cannot adopt the theory advocated by some in support of this standard, that licensing statutes automatically impose the adult standard on the driver. If this were so, the unlicensed minor driver who would, presumably, be an even greater menace on the highways, would be held only to the mitigated standard (Ann. 97 ALR 2d 876), the absence of a license being then only a portion of the proof of the infant’s lack of experience. Likewise, compliance with the administrative and quasi-criminal requirements of licensing laws is not controlling on the issue of negligence as between adult drivers and it is equally unimportant in the case of a minor and therefore should not be the criterion determining the standard by which the minor is to be judged. (7 Am. Jur. 2d, Automobiles and Highway Traffic, § 367 and the cases cited therein.)
V
As applied to the instant case, one of the critical elements in the opinion of the court is the risk involved when a dangerous missile is hit by a golfer. Just as a motor vehicle or other power-driven vehicle is dangerous, so is a golf ball hit with a club. Driving a car, an airplane or powerboat has been referred to as adult activity even though actively engaged in by infants. (Dellwo v. Pearson, supra.) Likewise, golf can easily be determined to be an adult activity engaged in by infants. Both involve dangerous instruments. (Povanda v. Powers, supra.) No matter what the age of a driver of a car or a driver of a golf ball, if he fails to exercise due care serious injury may *133 result. Driving a car, it is true, is not a game as golf may be. However, golf is not a game in the same way that football, baseball, basketball or tennis is a game. It is a game played- by an individual which in order to be played well demands an abundance of skill and personal discipline, not to mention constant practice and dedication. Custom, rules and etiquette play an important role in this game. Foremost among these is the fact, as is indicated on many scorecards, that one does not hit a ball when it is likely that the ball could or will hit someone else, for the obvious reason that someone could get hurt. In the definitive work on the subject the rule of etiquette is stated as follows: “ No player should play until the party in front is out of range ”. (“ Golf, Its Rules and Decisions ”, Richard S. Francis, Norwood Press, Norwood, Massachusetts, p. 369.)
The risks attendant in the game of golf have long been recognized. As early as 1905 the Scottish court in Andrew v. Stevenson (13 Scot. L.T. 581, 582 [1905]) stated that the risks of accident in golf are such, that no one is entitled to take part in the game without paying attention to what is going on around and near him. No mention was made of this not applying to people under 21, or under 18 or 15 or 10. The nature of the game is the same, even if the age of the participant varies. In the case at bar we have an 11-year-old boy playing in the company of three adults. He has taken lessons and plays regularly at his club. On a par-three hole of about 170 yards he sees the plaintiff within the realm of foreseeable danger and he hits a golf ball, a dangerous missile, 150 to 160 yards where it hits the plaintiff. Had it hit the plaintiff in the head it may have seriously injured or even killed him. The boy knew or should have known that a golf ball can inflict serious injury. He could have waited for a few seconds until plaintiff was clear, yet he chose to hit in breach of his duty and injury resulted. This particular infant defendant was for all purposes on the golf course as an adult golfer. He was playing in a foursome with adults; he had played this course in the company of adults before and he hit the ball, as well as, if not better than many adults. If this court were to say that the standard of care which this defendant must bring to a golf course is only that of an infant it would be ignoring the realities of the game as well as the situation applicable to this case.
It might be argued that the applicable standard should be that of an 11-year-old boy who possesses the experience or intelligence of one who has played a great deal of golf. This subjective standard does not adequately consider the objective nature of the game, the inherent risks involved and the undis *134 puted fact that a golf ball is a dangerous missile capable of inflicting grievous harm no matter who hits it. (Povanda v. Powers, supra.)
It is not uncommon today that teenagers are outstanding amateur golfers. Indeed, the 1968 United States amateur championship was won by Bruce Fleisher, a 19-year-old, and youths of varying ages were at the top of the leader boards all during this tournament. Craig Harmon was the amateur champion of this county at a young age. Members of high school teams in this area regularly shoot scores of championship caliber, as do competitors in ‘ ‘ junior ’ ’ golf. These facts are well known, and are not only particular to this county but are also applicable to other areas throughout the State and Nation.
Should this court say that all of these competitors are to be held to a different standard than adults playing golf? Even if we adopted a subjective standard .based on the experience and intelligence of a 16-year-old infant tournament golfer, is his experience and intelligence on the golf course less than that of an adult? Is the cutoff point a matter of age? I think not. When you have, as we have here, a situation where there is potentially an inherently dangerous object hit by someone who despite his age is for all practical purposes just like an adult on the golf course then it is this court’s opinion that he should be treated like an adult and held to an adult standard of care. It may be true that, hypothetically, a six-year-old could appear on the course for the first time and hit a ball which would hurt someone and the objective standard might not be applicable, but that would be the exception rather than the rule. People who play golf on a golf course know or should know that a golf ball can cause serious injury just as a car may cause serious injury and they should exercise the same degree of care.
In conclusion, this court holds that golf involves special factors which when considered together in the abstract and in conjunction with the fact situation in this particular case require that this infant be held to the standard of the reasonable man on the golf course. Motion denied.