JAQUELINE GOSS, PLAINTIFF-RESPONDENT, v.
STEVEN ALLEN, DEFENDANT-APPELLANT.

Argued November 17, 1975—Reargued March 22, 1976—
Decided June 24, 1976.

444

Mr. *Rocco L. D'Ambrosio* argued the cause for defendant-appellant (*Messrs. O'Donnell, Leary, & D'Ambrosio*, attorneys).

Mr. *Herbert E. Weiland* argued the cause for plaintiff-respondent (*Messrs. Hoyt, Weiland & Hoyt*, attorneys).

The opinion of the Court was delivered by

SULLIVAN, J. This case involves a claim for personal injuries and arises out of a skiing accident which occurred at a ski resort in Vermont. Suit was brought in New Jersey because defendant, who was involved in the accident, is a resident of New Jersey.[1] The jury returned a verdict for defendant based on its specific finding that defendant was not negligent. On appeal, the Appellate Division, in an opinion reported at 134 *N. J. Super.* 99 (1975), reversed and remanded for a new trial holding that the trial judge committed plain error in his charge to the jury as to the

---

[1] We were advised at oral argument that plaintiff has also filed suit in Vermont against the owner of the ski resort.

standard of care required of defendant in the cirmumstances. We reverse and reinstate the judgment for defendant.

The factual situation involved is detailed in the Appellate Division opinion and may be summarized as follows:

On February 21, 1972, plaintiff, an experienced skier, was serving as a first aid advisor on the ski patrol at the Mad River Glen ski- resort in Vermont. The facility includes a beginners slope which near its end makes an abrupt left turn. The accident occurred some 60 feet beyond the end of the slope in a flat area where plaintiff and a friend happened to be standing taking pictures. Plaintiff had been working in the first aid room which is adjacent to the area where plaintiff and her friend were standing.

Defendant, then 17 years of age, was a beginning skier who had limited cross-country skiing experience but had never attempted a downhill run. Nor had he ever been to Mad River Glen before. Upon arrival, defendant was sent to the beginners' slope. However, instead of riding the mechanical T-bar lift to the top, defendant confined his first run to the lower portion of the slope. He walked a quarter of the way up the hill and started to ski down, successfully completing the comparatively short run of 30 feet or so until he came to the abrupt left turn. In attempting to negotiate the turn, defendant lost control over his momentum and direction. He saw the two girls ahead of him but because of the short distance remaining, his efforts to regain control and his lack of experience, he did not call out until he was almost upon the girls. Plaintiff attempted to get out of the way but was unable to do so and was struck and knocked down by defendant.

Prior to trial, the court ruled that the law of the case would be the law of Vermont. Counsel have agreed that Vermont law as to this accident is the same as New Jersey's.

The trial court charged the jury that the standard of care applicable in the case was not the same degree of care required of an adult, but rather that degree of care which a reasonably prudent person of that age (defendant was

17 years of age) would have exercised under the same or similar circumstances. Following a side bar conference, the court supplemented its charge with the following:

"All right. Perhaps I didn't charge as clearly as I thought that I had charged with reference to the duty of a 17 year old. I know that I used the term 17-year-old beginner, and that may lead to some confusion. Let me try to straighten it out. The law imposes on a 17 year old that standard of care that a 17 year old with the experience and background that this 17 year old had. It does not impose any higher or any lower degree of care than can reasonably be expected of a 17 year old with respect to the experience and background that Mr. Allen had in this case."

There was no exception taken to the charge. As heretofore noted, the jury in answer to an interrogatory submitted to it found the defendant not negligent.

Plaintiff appealed solely on the ground that the jury verdict was against the weight of the evidence. The Appellate Division, however, *sua sponte,* raised the issue of plain error in the court's charge on the applicable standard of care. Following briefing of the issue and oral argument thereon, the Appellate Division reversed and remanded for a new trial finding plain error in the charge. In essence, the Appellate Division held that skiing was an adult activity and that where a child engages in an activity which is normally undertaken by adults, such as skiing, he should be held to the standard of adult skill, knowledge and competence, without allowance for his immaturity. The Appellate Division added that had an adult standard of care been imposed, as it should have been, the jury might well have found defendant negligent.

■■ The Appellate Division determination that defendant, in the circumstances presented, should be held to the standard of care required of an adult was premised on its conclusion that skiing is an activity which may be dangerous to others and is normally undertaken only by adults, and for which adult qualifications are required. See *Restatement,*

*Torts* 2d, § 283A, Comment c at 16 (1965). We find nothing in the record to support this conclusion. We think it judicially noticeable that skiing as a recreational sport, save for limited hazardous skiing activities, is engaged in by persons of all ages. Defendant's attempt to negotiate the lower end of the beginners' slope certainly cannot be characterized as a skiing activity that as a matter of law was hazardous to others and required that he be held to an adult standard of conduct. *Williams v. Gilbert,* 239 *Ark.* 935, 395 *S. W.* 2d 333 (1965); *Conway v. Tamborini,* 68 *Ill. App.* 2d 190, 215 *N. E.* 2d 303, (App. Ct. 1966); *Bixenman v. Hall,* 251 *Ind.* 527, 242 *N. E.* 2d 837 (1968); *Ranson v. Melegi,* 18 *Mich. App.* 476, 171 *N. W.* 2d 482 (Ct. App. 1969); 2 *Harper and James, The Law of Torts,* § 16.8 at 927 (1956); but see *Neumann v. Shlansky,* 58 *Misc.* 2d 128, 294 *N. Y. S.* 2d 628 (Cty. Ct. 1968), aff'd o. b. 63 *Misc.* 2d 587, 312 *N. Y. S.* 2d 951 (Sup. Ct. App. Term 1970), aff'd 36 *A. D.* 2d 540, 318 *N. Y. S.* 2d 925 (Sup. Ct. App. Div. Second Dept.)

█ We recognize that certain activities engaged in by minors are so potentially hazardous as to require that the minor be held to an adult standard of care. Driving a motor vehicle, operating a motor boat and hunting would ordinarily be so classified. However, as to the activities mentioned, New Jersey law requires that the minor must be licensed and must first demonstrate the requisite degree of adult competence. See annotation, "Age of minor operator of automobile or other motor-powered vehicle or craft as affecting his primary or contributory negligence," 97 *A. L. R.* 2d 872 (1964).

██ We find that the applicable standard of care, correctly charged by the trial court, was that generally applicable to minors. *Cf. Bush v. N. J. & N. Y. Transit Co., Inc.,* 30 *N. J.* 345, 353 (1959). See *Parker v. Gunther,* 122 *Vt.* 68, 164 *A.* 2d 152 (1960); *Johnson's Adm'rs v. Rutland R. R. Co.,* 93 *Vt.* 132, 106 *A.* 682 (1919). The required standard is that of a reasonable person of like age, intel-

ligence[2] and experience under like circumstances. 42 *Am. Jur. 2d, Infants*, § 142 at 136 (1969); *Restatement, Torts 2d*, § 283A at 14 (1965).[3] Among those circumstances, of course, would be the nature of the activity in which the minor was engaged.

Most of the cases which apply this standard have been concerned with the minor's contributory negligence and not primary negligence. It has been suggested that a different standard might well apply where the minor's conduct causes injury to others. See Schulman, "The Standard of Care Required of Children," 37 *Yale L. J.* 618, 619 (1928). While this Court has not previously had occasion to consider this question, the Appellate Division has held that the principles enunciated by this Court regarding the contributory negligence of a child would also apply to a case where the primary negligence of a child is involved. *Zuckerbrod v. Burch*, 88 *N. J. Super.* 1, 7–8 (App. Div.), certif. den. 45 *N. J.* 593 (1965). We think that a rational basis exists for applying the same standard whether the issue involves a question of contributory negligence of a child, or primary negligence. Moreover, to hold otherwise would further complicate an already difficult area of tort law. The practicalities of the situation weigh heavily in favor of a single standard. See annotation, 97 *A. L. R. 2d* 872, *supra*.

---

[2]Although the charge to the jury in this case omitted the word intelligence, we do not believe the defendant was thereby prejudiced in the light of the charge as a whole and the facts of the case. There was no objection to the charge based on this omission, nor did the Appellate Division notice it. See 134 *N. J. Super., supra*, at 104.

[3]The *Restatement* Comment states that the rule in § 283A has seldom been applied to anyone over the age of 16 but that no definite line can be drawn.

The Appellate Division, while it decided the case on the ground heretofore discussed, also criticized the trial court's application of the standard applicable to children to a 17-year-old person, pointing out that by *N. J. S. A.* 9:17B–1 *et seq.* (eff. January 1, 1973) every person in this State 18 or more years of age is deemed to be an adult. The Appellate Division could see little sense in holding an 18-year-old person to one standard of care and applying a lesser standard to one 17 years of age.

■ However, this problem will exist no matter where the line is drawn, whether it be at 10, 14 or 18 years. Since it has to be drawn somewhere, it is not unreasonable to fix it at the age of legal maturity — now 18 in this State — holding those under that age and capable of negligence to the standard of care required of a reasonable person of like age, intelligence and experience under like circumstances. *Prosser, Torts,* § 32 at 154–157 (4 Ed. 1971). This case, though, must be decided on the basis of the law prior to the effective date of the cited statute. Although there is no decided case in New Jersey fixing the age at which the standard of care governing children no longer controls, 18 years would appear to be the age at which a person should be held to adult responsibility in tort matters. Such is already the case with criminal responsibility — 18 being the age at which a person's criminal or anti-social behavior ceases to be regarded as juvenile delinquency and is treated as a criminal or quasi-criminal act, subject to the processes and sanctions normally applicable to adults. See *N. J. S. A.* 2A:4–43 (superceding *N. J. S. A.* 4–14). The trial court, therefore, charged the jury correctly as to the standard of care applicable to the 17-year-old defendant herein.

■ Finally, we consider plaintiff's contention that the jury verdict was against the weight of the evidence in that the uncontradicted evidence leads to the inescapable conclusion that the defendant was negligent. The Appellate Di-

vision, since it disposed of the appeal on other grounds, did not rule on this contention. We have reviewed the proofs and conclude that a jury question as to defendant's negligence was presented and that the verdict returned was not against the weight of the evidence.

The judgment of the Appellate Division is reversed and the judgment of the trial court in favor of defendant is hereby reinstated.

SCHREIBER, J. (dissenting). The standard of care now made generally applicable to minors does not square with reality, nor does its purported application justify the charge given.

## I

The factual context of this case is set forth both in the Appellate Division and majority opinions. Conspicuous by their absence, however, are the trial court's numerous charges on the defendant's standard of care. In chronological order and intermittently, the trial court instructed the jury:

1. "The law says that as far as one under 18 is concerned—18 or younger — we don't exact from him or her the same degree of care that we exact from an adult. We expect that we call an infant, which is anyone under 18 — we exact that degree of care which a reasonably prudent person of that age would have exercised under the same or similar circumstances. So, as I said to you, Steven Allen on this date was 17 years old, and the law exacts from him the standard of care that a 17 year old would exercise under the circumstances."
2. [Allen claimed he] "exercised that degree of care which a reasonably prudent person would or should have exercised."
3. [Defendant claims he] "exercised reasonable care as a 17-year-old beginner skier."
4. "Like any 17 year old or like any beginner skier or both — any beginning 17-year-old skier."
5. [The applicable standard is] "that degree of care that might reasonably be expected of a 17-year-old beginner skier."

6. "Perhaps I didn't charge as clearly as I thought that I had charged with reference to the duty of a 17 year old. I know that I used the term 17-year-old beginner, and that may lead to some confusion. Let me try to straighten it out. The law imposes on a 17 year old that standard of care that a 17 year old with the experience and background that this 17 year old had. *It does not impose any higher or any lower degree of care than can reasonably be expected of a 17 year old with respect to the experience and background that Mr. Allen had in this case.*" [Emphasis supplied].

The majority accepts and approves the last, number 6, which was the trial court's supplemental charge. That simply stated that Allen had to exercise the same care as someone of the same age, experience and background. This charge does not equate with the standard adopted today by the majority, namely that Allen must act in accordance with the conduct of a *reasonable person* of the same age, *intelligence* and experience under the same circumstances.

The significance of the omission of intelligence in the charge becomes apparent when one recognizes the importance of that factor in fixing the required standard of care. Intelligence in this context relates to mental and judgmental capacity but not the exercise of that capacity. The distinction between exercise of mental or judgmental capacity and the capacity itself points to the objective-subjective elements in the test. *Restatement, Torts* 2d, § 283A, Comment b at 15 (1965). The defendant's conduct is to be measured against the conduct of the average or usual 17-year-old having the same judgmental capacity.

The crucial element in determining the standard of care to be established for infants centers about the judgmental capacity factor to comprehend, understand and perceive risk and danger. Age, experience, education, social background and intellectual capability have their respective places in the formation of judgmental capability. Whether the infant should or should not have acted or reacted in a certain manner depends on whether the theoretical average infant having the same capacity would have acted or reacted in the same fashion.

Case law has stressed the judgmental capacity factor. In *Hellstern v. Smelowitz,* 17 *N. J. Super.* 366, 378 (App. Div. 1952), Judge Jayne pointed out that consideration must be given to the child's "capacity to understand and avoid dangers to which it is exposed in the actual circumstances and situation under investigation." When this Court last considered the infant standard of care problem, *Bush v. N. J. & N. Y. Transit Co., Inc.,* 30 *N. J.* 345 (1959), its analysis focused upon the "problem of the capacity of children of tender years to act negligently." *Id.* at 352.

The *Restatement, Torts* 2d, § 283A, advocates that a child's acts or omissions be compared to that of a reasonable person of the same age, experience, and intelligence.[1] The majority has apparently adopted this rule. Although the *Restatement* does not on its face view age, experience, and intelligence as simply some elements to determine judgmental capacity, in its discussion under Comment b, it recognizes that the fact finder must analyze those factors to determine judgmental capacity. The *Restatement* asks whether that hypothetical person with the same judgmental capacity would have acted or reacted in the same manner. The trial court's supplemental charge omitted any reference to the defendant's intellectual capacity and failed to clearly instruct the jury to measure the defendant's judgment against that of the average 17-year-old with the same intellectual capacity. The jury could not possibly have understood the subjective-objective test which the Court is adopting this day. So even assuming the correctness of the principle adopted by the majority, in view of the several conflicting instructions given to the jury, a new trial is warranted.

---

[1]The *Restatement* reads as follows:

§ 283 A. Children.

If the actor is a child, the standard of conduct to which he must conform to avoid being negligent is that of a reasonable person of like age, intelligence, and experience under like circumstances.

## II

Presumably the majority is adhering to the principles enunciated in *Bush v. N. J. & N. Y. Transit Co., Inc., supra.* We held there that a child under age seven was rebuttably presumed to be incapable of negligence and the issue was not to be submitted to the jury in the absence of evidence "from which the jury could infer that the child was capable of understanding and avoiding the danger of injury involved in the circumstances of the case." 30 *N. J.* at 358. The party asserting the infant's negligence or contributory negligence bore the burden of proof.

Under the norm adopted this day where the negligence or contributory negligence of an infant between ages 7 and 18 is in issue, his activity or inactivity is to be measured by a reasonable person of the same age, intelligence and experience under similar circumstances unless the activities "are so potentially hazardous as to require that the minor be held to an adult standard of care." Ante at 447. There are several inherent difficulties in and inequitable consequences of this rule.

What criteria are to be employed by the jury to ascertain whether an activity is "potentially hazardous"? If a "potentially hazardous" activity is one which results in serious or permanent injury, then almost any activity might fall within that category. The injured person who has lost the sight of an eye resulting from a carelessly thrown dart, or stone, or firecracker, the death caused by a bicycle, or an individual seriously maimed due to an errant skier — all are indisputable proof of "potentially hazardous" activity. The majority prescribes no guideline except to imply that whenever licensing is required, the "potentially hazardous" test is met.[2] But the State does not impose a licens-

---

[2] No license is required for a motorized bike, but a ten-speed bike can be pedaled at 25 miles per hour on a flat road. The U. S. Consumer Product Safety Commission reports that there are 500 to 1000 fatalities and about 500,000 permanently crippled each year from bicycle mishaps.

ing requirement on all "potentially hazardous" activities and whether one has a license or not is often not relevant in measuring conduct of a reasonably prudent person. Whether the driver of a automobile is licensed, for example, is not relevant in adjudicating if the automoble was being driven in a reasonable prudent manner. In *Charbonneau v. MacRury*, 84 *N. H.* 501, 153 *A.* 457, 464 (1931), the New Hampshire Supreme Court pointed out that by licensing drivers the State "has not undertaken to deal with the rule of care at all. It neither expressly or impliedly authorizes the trier of facts to disregard the legally ascertainable defects of the actor when material to the issue of his reasonable conduct, whether he be an adult or a minor. The authorized license is not a certificate of the physical perfection of the adult or of the mental maturity of the eligible minor."

To the injured party, his loss is the same irrespective of the wrongdoer's date of birth and it is inequitable and unjust that a minor should not be expected to exercise the same degree of care as the mythical reasonable and prudent person, at least when engaged in adult activities.[3] The majority's proposition unnecessarily sanctions the imposition of the burden of young people's hazards on innocent victims. Whenever an infant participates in activities in which adults normally engage, the infant should be held to the adult standard of care. Other courts have not hesitated to do so. Minors participating in these activities are mature enough to possess the "discretion and physical capacity consistent with . . . the presumption of adult responsibility . . . ." *Nelson v. Arrowhead Freight Lines*, 99 *Utah* 129, 104 *P.* 2d 225, 228 (1940). *See also, Dellwo v. Pearson*, 259 *Minn.* 452, 107 *N. W.* 2d 859 (1961) (motor boat operation); *Neumann v. Shlansky*, 58 *Misc.* 2d 128, 294

---

[3]Dean Shulman acknowledged that "in some situations a minor is fully as competent as a person over twenty-one and should be held to the same standard of conduct." Shulman, "The Standard of Care Required of Children," 37 *Yale L. J.* 618 (1928).

*N. Y. S.* 2d 628 (Cty. Ct. 1968), aff'd o. b. 63 *Misc.* 2d 587, 312 *N. Y. S.* 2d 951 (App. T. 1970), aff'd mem., 36 *A. D.* 2d 540, 318 *N. Y. S.* 2d 925 (1971) (golfing); *Harrelson v. Whitehead,* 236 *Ark.* 325, 365 *S. W.* 2d 868 (1963) (motorcycle); *Jackson v. McCuiston,* 247 *Ark.* 862, 448 *S. W.* 2d 33 (1969) (tractor-propelled stalk cutter); *Adams v. Lopez,* 75 *N. M.* 503, 407 *P.* 2d 50 (1965) (motor scooter); *Betzold v. Erickson,* 35 *Ill. App.* 2d 203, 182 *N. E.* 2d 342 (App. Ct. 1962) (truck). Some jurisdictions recognize that children after a certain age are presumably capable of adult discretion. *Lassiter v. Poss,* 85 *Ga. App.* 785, 70 *S. E.* 2d 411, 414 (Ct. App. 1952) (14); *Nelson v. Arrowhead Freight Lines, supra* (14); *City of Austin v. Hoffman,* 379 *S. W.* 2d 103, 107 (Tex. Civ. App. 1964) (14).

Inherent in these approaches, either on the basis of activities or on age well below legal adulthood, is recognition of the realism and justness in applying the adult objective standard. In some measure this is probably due to the expansion of experiences and activity of minors, as well as the protection afforded all members of the family by comprehensive liability insurance policies.[4] Functionally, skiing is as much a sport for people over 18, as under 18.[5] It is no different than golf or cycling. And the hazards to the public whether operating a motor vehicle, power boat, motor scooter, bicycle, tractor or hitting a golf ball, or skiing are self-evident. Third persons may be exposed to serious injury because of the dangers which occur when the activity is not being performed in a reasonably prudent manner by a rea-

[4]Payments for child responsibilities are made by adults or insurance companies under policies paid for by adults. James, "Accident Liability Reconsidered: The Impact of Liability Insurance," 57 *Yale L. J.* 549, 554–556 (1948). In Note, "Torts: Application of Adult Standard of Care to Minor Motor Vehicle Operators," 1962 *Duke L. J.* 138, 141 it is stated that "Minors are seldom sued in the absence of insurance, because they usually lack sufficient financial resources to make suit worthwhile."

[5]Sullivan, *The Complete Book of Family Skiing* (1966).

sonably prudent person and no sound reason exists for not holding the child defendant to the standard of the reasonably prudent adult. *See* 2 *Harper & James, Law of Torts*, § 16.8 at 927 (1956).

## III

The 18-year-old line drawn today is contrary to policies enunciated by the legislature in regulating some aspects of the conduct of minors in relation to others. A 16-year-old juvenile may be tried as an adult for a homicide, treason, offense against the person in an aggressive, violent and willful manner, or for sale and distribution of narcotics. *N. J. S. A.* 2A:4-48. At age 16-½, a person may obtain a special learner's permit to drive a car so that a driver's license may be obtained at age 17. *N. J. S. A.* 39:3-13.1 and *N. J. S. A.* 39:3-13.4. At age 13 one may be licensed to operate a boat with an outboard motor. *N. J. S. A.* 12:7-34.7. Under this Court's rules a 17-year-old infant may file a verified petition. *R.* 4:26-2(b). The 18-year-old line is not consonant with the common law rule that at age 14 an infant is presumed to have the capacity to be guilty of criminal intent. *Blackstone's Commentaries*, Bk. IV, Sec. 23. The *Restatement, Torts* 2d, § 283A, Comment a refers to the fact that its rule "has seldom been applied to anyone over the age of sixteen" and "is commonly applied to children of tender years."

The 18-year demarcation line ignores the earlier mental development of young people. A few comments from experts in the field of child behavior demonstrate the point.

* * * [T]he middle-years [6 to 12 plus] child's growing mastery of symbols and his ever-broadening · fund of· general knowledge permit him to think in ways that come to approximate those of adults. Indeed, in some areas, the child may know a great deal more than his less educated parents and so be able to think more rationally than they * * *. [L. Stone and J. Church, *Childhood and Adolescence* at 412-413 (2d ed. 1968)].

* * * * * * * *

* * * Rodman [in "Children Under the Law," 43 *Harv. Ed. Rev.* 487, 489 (1973)] notes that the law's placement of the dividing

line between legal minority and adult status at the age of eighteen or twenty-one years is "artificial and simplistic" because it obscures the dramatic differences among children of different ages and the striking similarities between older children and adults. That observation seems so sound and obvious that it raises the question of how such differences — and also the resemblance between older children and adults — have come to be obscured? [Skolnick, "The Limits of Childhood: Conceptions of Child Development and Social Context," in *Children and the Law* (Symposium), 39 *Law & Contemp. Prob.* 38, 43 (1975)].

Selection of the 16th year is a more reasonable age at which to draw the line for the individual to be held to an adult standard of care irrespective of the activity.

## IV

I would adopt a rule that an infant 16 years or over would be held to an adult standard of care and that an infant between ages 7 and 16 would be rebuttably presumed to have the duty to act, while engaged in an adult activity, that is, one in which adults normally or usually engage, as a reasonably prudent person, but that, upon a showing that adult judgmental capacity for that type of activity is not warranted, the subjective-objective criteria of the *Restatement* and adopted by the majority be applied.[6] Application of this rule recognizes the difference between negligence and contributory negligence since the required judgmental capacity in foreseeing and avoiding the hazards created by others may be substantially greater than that to be comprehended by

---

[6]Professor Bohlen suggests that where harm has been intended the infant should be held "to exactly the same extent as for his failure to conform to those standards of conduct which are obligatory upon normal persons." "Liability in Torts of Infants and Insane Persons," 23 *Mich. L. Rev.* 9, 32 (1924). *See* Note, "A Proposal for a Modified Standard of Care for the Infant Engaged in an Adult Activity," 42 *Ind. L. J.* 405 (1967).

one's own acts.[7] *See Zuckerbrod v. Burch*, 88 *N. J. Super.* 1, 8 (App. Div. 1965); Note, *supra* fn. 4, 1962 *Duke L. J.* at 142–143; 2 *Harper & James, supra, Law of Torts,* § 16.8 at 40 (Supp. 1968); *Roberts v. Ring*, 143 *Minn.* 151, 173 *N. W.* 437 (1919). If the infant between ages 7 and 16 is found not to have been occupied in an adult activity, the *Restatement* rule adopted by the majority would be applicable. As to those 16 or over I would apply the adult standard.

I would affirm the judgment of the Appellate Division.

*For reversal and reinstatement*—Chief Justice HUGHES, Justices SULLIVAN and PASHMAN and Judges CONFORD, KOLOVSKY and CARTON—6.

*For affirmance*—Justice SCHREIBER—1.

---

[7]Shulman, *supra* fn. 3 commented:

The standard of conduct to which an infant is to be held when his own liability is in question may properly be quite different from that to which he is to be held when he seeks to recover from an admittedly negligent defendant. It is apparent that different considerations may be involved in these several types of cases. There is a strong policy in favor of protecting children from losses attributable to their immaturity. It would be quite plausible, therefore, for a court to be more lenient toward children whose injuries are attributable, not only to their immaturity, but also to conceded tortious conduct on the part of the defendant, than toward children who are the sole responsible causes of injury to others. [37 *Yale L. J.* at 619].